BEDFORD UNDERWOOD v. THE STATE.

No. 4110. Decided October 21, 1908.

Motion for Rehearing Overruled March 20, 1909.

**1.—Theft from a Person—Charge of Court—Alibi.**

Where upon trial of theft from the person the defendant's testimony did not exclude the idea that he was not there when the property was taken; and the court fairly submitted defendant's case in respect to the matter of guilty participation by him in the theft under the evidence, there was no error in the court's failure to submit defendant's requested charge on alibi.

**2.—Same—Evidence—Cross-Examination—Conversation—Harmless Error.**

Upon trial of theft from the person of a watch, where defendant's witness testified that he had seen the watch in defendant's possession some time before the theft, where upon cross examination the State asked the witness what was the first thing said about the watch, the witness answered that the defendant said he swapped for it, whereupon defendant's counsel asked witness to state all the appellant said how he came by the watch, to which the court sustained an objection. Held while the evidence was admissible as part of the entire conversation, yet the answer of the witness being favorable to the defendant, and in view of the fact that defendant himself testified to all the circumstances of his possession of the watch, the error, if any, was harmless.

Appeal from the District Court of Wood.   Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of theft from a person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*M. D. Carlock,* for appellant.

*F. J. McCord,* Assistant Attorney-General, and *J. H. Beavers,* for the State.—Cited cases in opinion.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Wood County charged with theft of a certain watch from one Thad Gray.   On his trial he was convicted of the offense charged and his punishment assessed at confinement in the penitentiary for two years.   The facts are briefly, as claimed by the State, that in March, 1907, appellant and Gray came to Mineola; that along about midnight of the same night they went down to the depot, Gray, at least, intending to take passage on the train going west about 3 o'clock that night.   Gray testifies that he went to sleep with the watch in his breast pocket and the chain fastened to his overalls; that when he woke up about 3:30 o'clock his watch was gone; that it had been taken out of his pocket and unsnapped from the chain; that at the time several parties were sitting in the waiting room of the depot and he immediately left the waiting room at the depot and started to town to look for an officer, when appellant overtook him and asked him where he was going; that at first he told appellant that he was just going to knock around some, when appellant again asked him where he was going, and he said to appellant that some one had stolen his, Gray's, watch and he was going to hunt an officer and get him to search the crowd in the depot.   That at this time appellant asked him if he could have an officer to search the people and wanted to know whether the officer had a right to do so; that he, appellant, went a little piece further and stopped, when Gray asked him to come and go with him to hunt an officer.   Appellant replied that he could not go, that he had a chill and wanted to go back to the depot where there was a fire, and warm; that appellant returned to the depot and Gray, in a short while, returned with an officer and appellant pointed out two men whom he said he saw sitting by him, Gray, while he was asleep, and further said if he wanted to the officer might search him also, as he had sat beside him while he was in the depot asleep; that they searched some other persons, but did not search appellant at the time.   Gray's watch was sometime after this found in the possession of J. T. Roberson, who testified that he received the watch from one Brandon sometime in the summer of 1907.   Brandon testified that he bought the watch from appellant in the last of March or first of April of the same

year.  Without going into details, we think the testimony of the
State abundantly identifies the watch which Brandon bought from
appellant and afterwards sold to Roberson as the watch which Gray
lost.  Appellant denies stealing Gray's watch and claims that he
had swapped a pistol which he owned to a black negro wearing a
blue ducking suit of overalls and riding a bay horse, for a watch
which he claimed was the watch he had sold to Brandon, and in-
troduced his father and mother to support this contention, and
also testified himself on the trial to the same facts.  The testimony
of the State showed a number of untrue and contradictory state-
ments made by appellant as well as an· offer on his part, if not
prosecuted, to pay for the watch.  This is a very brief summary of
the evidence and is perhaps sufficient to illustrate the questions that
arise in the case.

There were a number of special instructions requested by appel-
lant which we think need not be noticed.  The appellant assigns as
error the refusal of the court to give the following special charge
requested by him: "Among other defenses set up by the defendant is
what is known in legal phraseology as an alibi; that is, that if the
offense of theft from the person, as alleged, was committed, the de-
fendant was at the time of such offense, at another and different
place from that at which such offense was committed and therefore
was not and could not have been the person who committed the of-
fense, if such offense was committed.

"Now, if the evidence raises in your mind a reasonable doubt as
to the presence of the defendant, at the place when the offense, if
any was committed, and if from the evidence you retain a reason-
able doubt that he might not have been elsewhere, he is entitled to
the benefit of such doubt and you will acquit him."  The testimony
found in the record and the only testimony as to the whereabouts
of appellant except the statements made by him to Gray at the time
the watch was taken, is that of himself.  Touching this matter he
testifies as follows:  "The witness Gray was on the train with me;
I ate supper at the same restaurant but was not with him. · During
the night I went to the depot and met the witness Gray going away
from the depot, I had been up on the show grounds and taking in
the various shows, and when I met the witness Gray he told me
that he went to sleep in the depot and somebody had robbed him of
his watch; I told him to find a policeman; that he could find one
up on the show grounds, and that I would go on up to the depot
and stay there until he came back; told him that I was cold and
would go to the fire.  I thought he could find an officer without my
assistance."  In his general charge the court instructed the jury
as to the constituents of the theft herein charged, and that if they
believed from the evidence beyond a reasonable doubt that appellant
fraudulently and privately stole said watch from Gray without his
consent and with the fraudulent intent to appropriate same to his

use and benefit, they would find him guilty, and unless they so found they would acquit him. He also charged upon the doctrine of recent possession of stolen property and the effect of appellant's explanation thereof. The court also charged that if the watch had been stolen from Gray under the circumstances, which would make the offense theft from the person, but if they believed that appellant got the watch from a negro in exchange for a pistol, or if they had a reasonable doubt as to whether he got the same from a negro, they would acquit; or if they believed that the watch which appellant sold to Brandon was not the watch taken from Gray, or if they had a reasonable doubt as to this fact they would acquit appellant. The court also charged upon the question of circumstantial evidence as well as the presumption of innocence. The authorities are not entirely clear as to when this court should or will reverse a case for the refusal of the court to charge on the subject of alibi. In the case of Byas v. State, 41 Texas Crim. Rep., 51, 51 S. W. Rep., 923, Judge Henderson says: "We do not understand that appellant offered any affirmative proof that he was elsewhere at the time of the alleged attempt at burglary, further than that he denied being at the place when it was committed. He was evidently in that vicinity, according to the testimony of his own witnesses. The general charge of the court that they should acquit defendant unless they believed 'from the evidence, beyond a reasonable doubt, that defendant did by force attempt to enter the house mentioned in the indictment, and that it was then and there his intention to have carnal knowledge of the said Ella Garrett by force, and without her consent,' and the court's charge on reasonable doubt, we think, were sufficient." In Padron v. State, 41 Texas Crim. Rep., 548, 55 S. W. Rep., 827, this case, however, is in terms overruled. In that case Judge Brooks, speaking for the court, says: "Appellant testified to a state of facts showing clearly, if true, that he was not at the place where the homicide is alleged to have been committed. This being the case, we think the issue of alibi is raised. We held in Wilson v. State, 41 Texas Crim. Rep., 115, 51 S. W. Rep., 916, that the charge on alibi should be given where defendant swears that he was at another place at the time of the alleged crime. We do not understand it is necessary for appellant, to swear in so many words that he was at another and different place than that of the homicide, in order to raise the issue of alibi. But if the evidence shows that he was at another or different place from the scene of the homicide, then the issue of alibi is raised, regardless of how this statement is made. It is the province of the jury to pass upon the sufficiency and truthfulness of the defenses urged by appellant. It is the province of the court to charge, under the statute, all the law applicable to the facts. We do not think this was done in this instance." It seems to us that the reasoning of the court in the case last cited is very strong, but the decision in each case must, to

a large extent, depend upon its particular facts. We believe that the true distinction is laid down in the case of Parker v. State, 40 Texas Crim. Rep., 119, 49 S. W. Rep., 80, where it is held in effect that unless the testimony fails to exclude the idea of his presence at the homicide a charge upon the subject of alibi need not be given. In no case should a cause be reversed for the refusal of such a charge unless in the light of all the testimony the evidence excludes the theory of appellant's presence at the place of the crime. It will be noted that the opinion in the Parker case was delivered by Judge Brooks, who also wrote the opinion in the Padron case, and the two opinions are, as we believe, not only consistent, but construed together, state the true rule. Now, then, does appellant's testimony in this case exclude the idea of appellant's presence at the time of the theft? He says he was in the town of Minola at the time of the theft; that he went there with the witness Gray; "that he had supper at the same restaurant but was not with him." Not with him where? At the restaurant? Gray says they took supper together. We understand the above language, "was not with him," to refer to and mean that he was not with him at the restaurant. Appellant was in the town of Mineola during most of the night and was confessedly at the depot in said town at the time, or about the time, Gray missed his watch. Gray had been asleep, according to his testimony, quite awhile. Where was appellant during this time? The record is silent as to this. His testimony does not exclude the idea that he was not there when the watch was taken; nor, do we believe, that where appellant has had a fair submission of his case in respect to the matter of guilty participation in the theft under the evidence as here presented that the case should be reversed because of the failure of the court to charge on the subject of alibi.

It appears on the trial of the case that while the witness Lewis Curtis was on the stand, and after he had testified that he saw appellant on the evening before the watch was alleged to have been stolen from the prosecutor, Thad Gray, and while appellant was exhibiting the watch which he claims was thereafter sold to Brandon, counsel for the State thereafter on cross-examination asked the witness what was the first thing said about the watch. To which the witness answered that he, appellant, said he swapped for it; that thereupon his counsel asked the witness Curtis to state all the appellant told him about how he came by the watch, to which question and answer the State objected and which objections were by the court sustained. It is shown in the bill that if the witness had been permitted and allowed to answer he would have testified that the defendant at the time told him that he swapped the pistol for the watch about two weeks previous, and that he had swapped with a black negro riding a bay horse, with a blue suit of ducking overalls on and that the negro gave him the watch for the pistol. We think

that under the general rule that where part of a conversation is admitted in evidence, all the conversation relating to the same matter should be admitted; that this witness should have been permitted to give in evidence the entire conversation had at the same time and in reference to the same matter. The action of the court was not hurtful to appellant. The conversation proven by the State was of itself exculpatory and consistent with appellant's defense, and the details of how he obtained the property, while perhaps admissible, lend little additional force to the general statement that he had traded for the watch. Therefore, in view of the fact that appellant, on the witness stand, gave testimony himself as to the circumstances of his possession of the watch, we do not believe that the refusal of the court to admit this testimony was of such gravity as to work a reversal of the case.

There are a number of other questions raised on the appeal, but they are, as we believe, without merit.

Finding no error in the judgment of the court below, the same is hereby in all things affirmed.

*Affirmed.*

[Motion for rehearing overruled March 20, 1909.—Reporter.]