ROY HELMOUTH HAMPTON V. THE STATE.

No. 20566. Delivered November 8, 1939.
Rehearing Granted February 14, 1940.

The opinion states the case.

*H. R. Bishop,* of Fort Worth, for appellant.

*Marvin H. Brown, Jr.,* Criminal District Attorney, and *Dayton Moses,* Assistant Criminal District Attorney, both of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of an antomobile. The punishment assessed is confinement in the state penitentiary for a term of ten years.

It was averred in the indictment that on April 2, 1935, appellant had been convicted in the Criminal District Court Number 2 of Dallas County in Cause No. 6307 of a felony of like character, to-wit: Theft of property over the value of $50. Upon the trial of this case the judgment of conviction in cause number 6307 was offered in evidence and appellant identified as the same person convicted in said cause.

Appellant's first contention is that the trial court erred in declining to sustain his motion for an instruction to the jury to return a verdict of not guilty on the ground that the evidence was insufficient to warrant his conviction. The State's evidence shows that on the night of September 10, 1938, someone stole an automobile belonging to H. G. Dollar while it was parked on 10th Street in the City of Fort Worth. Mr. Dollar, who was a city policeman, missed his car a short time before midnight and immediately reported it to headquarters. Messrs. Lockhart and McQueen, two city policeman, received information of the theft by radio. At the time they were on Highway 34 going toward Mansfield. They immediately started back to the city. When they reached Riverside Drive, they saw two small boys forced to jump up on the curb to avoid being hit by a swerving automobile. The car hit the curb, bounced back and then started down the street. The officers pursued the car which increased its speed, finally reaching a speed of about 70 miles per hour. After the car had entered Wichita Street, the party driving it tried to make a right hand turn onto a dirt road, but the car failed to make the turn and hit a ditch, ran into a wire fence and pulled down about 150 feet of it. The party, whom the officers identified as the appellant, jumped from the car and ran into a field of sunflowers. About an hour later a motorcycle officer who saw the party run into the field, arrested appellant about a mile from the scene of the wreck. Appellant's trousers were torn into shreds, his body scratched and cut, and he was bleeding. He explained his condition by stating that he had been in a fight, but did not say when or where. He told the officer that his name was Charley Clark. Appellant did not testify but his father and sister testified that they knew appellant did not wear light trousers as testified to by the officers, but wore a pair of brown trousers. The car was sufficiently identified as the one stolen from Mr. Dollar.

Appellant addressed a number of objections to the court's charge. His main objections are (1) that the court failed to instruct the jury relative to the law of an alibi and (2) that the court failed to instruct the jury relative to an exculpatory

statement when apprehended. It is our opinion that the issue of alibi was not raised by the evidence; hence no instruction thereon was required. Nor is there in evidence such an exculpatory statement as would require an instruction thereon to the jury. The mere fact that appellant said he had been in a fight when questioned about the condition of his clothes would not raise the issue of alibi as he might have been in a fight several hours before he committed the theft. Nor was his statement exculpatory of the offense. It might be conceded that he had had a fight and that during the encounter his clothes were torn before he committed the offense; but this would not entitle him to an instruction that if his clothes were torn while he was engaged in a fight to acquit him. Before such an instruction would be justified there would need to be evidence showing that at the time of the theft he was engaged in a fight. The statement did not exclude the idea of his presence at the time and place of the commission of the offense charged. See Parker v. State, 40 Tex. Crim. Rep., 119, 49 S. W., 80; Woods v. State, 80 Tex. Crim. Rep., 73, 188 S. W., 980 and authorities cited.

Bill number three complaining of the court's action in overruling his second application for a continuance is without merit. The trial judge has qualified the bill by stating that this was a second continuance and that the cause had once before been continued because of the absence of counsel for defendant. Moreover, it is our opinion that the appellant has not shown that degree of diligence which the law requires. The indictment was returned against him on September 24, 1938, but it appears from his motion that it was March 10, 1939, before he ever caused a subpoena to be issued for the absent witness. He states that he did not learn of the return of said subpoena until the morning of the trial on March 22. The record fails to disclose when the subpoena was returned. It might have been returned on the 12th of March. If it was and appellant made no further effort to locate the witness and have other process issued, then he was also negligent in this respect. And while appellant states in his motion that "said subpoena is attached hereto and along with the application is made a part of this motion and shows that the said witness was not served by the Sheriff of Dallas County" we are unable to find the same in this record. Under these circumstances, we do not think he has shown that degree of diligence required by law. See 9 Tex. Juris., p. 785, Sec. 100 et seq.

After a most careful review of all the matters complained

of we have reached the conclusion that no reversible error was committed. Therefore the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant stresses the contention that the record fails to show his connection with the automobile alleged to have been stolen from Mr. Dollar; in other words, that the evidence fails to identify the car which it is claimed appellant wrecked as the alleged stolen car. This has given us much concern.

It is apparent that the contention now urged is not an afterthought for appellant presented a motion for an instructed verdict of acquittal for the reason as stated in the motion "that the State has wholly failed to connect the defendant with the taking of the automobile belonging to Mr. H. G. Dollar." Mr. Dollar was a police officer of the City of Fort Worth. On the night of the 10th of September, 1938, at about eleven o'clock he parked his car at the corner of Tenth and Main Streets, and went about his duty patrolling his territory. About twelve o'clock he discovered that his car was gone and reported it to headquarters. He testified that about an hour after he reported its loss he received information "about the location of my car * * * but did not go to the place where the car was reported to have been found." That same night between twelve and one o'clock he saw and identified his car at Parrent Garage, a place where the police stored cars which had been taken in charge by them. The car had been badly wrecked, and had scratches on the right side and top as if it had been in the wire. The car Mr. Dollar described as his was a "Ford '34 Coach, V-8," but he did not give the license number it bore. Mr. Lockard and Mr. McQueen, police officers, were cruising in a police car and at the corner of Lancaster Avenue and Riverside Drive they noticed a car being operated in such manner as led them to believe the driver was intoxicated; they gave chase to the car for about five or six miles until the car was run into a fence and badly torn up. The party who was operating the car ran away and was not arrested until about an hour later. At the time the officers started chasing the car they had no information that Mr. Dollar's car had been stolen, but received such information over the radio in a police car

after the car they had been chasing had been wrecked, and while they were at the scene of the wreck. It is apparent from the record that the effort of the State was directed toward identifying appellant as the driver of the wrecked car, which perhaps accounts for the dearth of proof on the point that the wrecked car was the stolen Dollar car, evidence of which would not seem difficult to obtain.

The only identifying description of the wrecked car was that it was a V-8 Ford Coach. It does not appear from the record before us how or by whom the car recovered at the Parrent Garage was taken there. No one testified to having received it there, and no one testified to having taken it there from the scene of the wreck, and no witness even gives the license number of the car.

Police officer Lockard testified on direct examination that when he and his partner first saw appellant on the night in question that: "He was headed toward Mansfield in *this car belonging to Mr. Dollar*." It escaped our attention that such evidence was without probative value in establishing identity or ownership of the car in view of the fact that the same witness also testified as follows: "I didn't know that auto of Mr. Dollar's. I do not know what the license number was, I don't recall just what the license number was on that * * * I didn't know that there had been an auto unlawfully taken in Fort Worth at that time, especially the car we were trailing. As a matter of fact, I believe we were trailing a man that was slightly intoxicated."

Officer Bartlett arrested appellant about an hour after the wreck and brought him back to the wrecked car. Other officers at the scene of the wreck had received a police broadcast that Mr. Dollar's car had been stolen. Officer Bartlett, referring to the wrecked car, testified: "If that car was stolen I didn't know when it was stolen, I didn't know that. I didn't know who that car belonged to."

So far as we know there has been no variance from the principle stated in Scoggins v. State, 92 Tex. Cr. R. 424, 244 S. W. 535, that: "In order to warrant a conviction for theft where possession of recently stolen property is relied on, the property in possession of the party accused, or which had been in his possession, must be identified as that stolen. It is true this may be done by positive testimony or by proof of circumstances; when the latter is resorted to it must measure up to the standard which the law requires. See Branch's Ann. Tex. P. C. p. 1342, Sec. 2482." See also Fountain v. State, 90

Tex. Cr. 474, 241 S. W. 389. It seems clear that no positive testimony on the question of identity of the car was placed in the record. In order to hold the proof by circumstances sufficient it would be necessary for us to indulge the presumption that because Mr. Dollar's car had been wrecked, and had scratches on the top and side which looked like "wire scratches," it therefore must have been the same car which had been wrecked by appellant, and this, in face of the fact that the record fails to show that any one ever moved the wrecked car from the place of the wreck.

After a most careful re-examination of the record we are constrained to grant appellant's motion for rehearing, set aside the judgment of affirmance, and now reverse the judgment of conviction, and remand the cause for a new trial, and it is so ordered.